[No. D047650. Fourth Dist., Div. One. Nov. 16, 2006.]

LUCIAN P. DAY et al., Plaintiffs and Respondents, v.
FRED COLLINGWOOD, Defendant and Appellant.

**COUNSEL**

Purdy & Brehme, T. Hall Brehme IV and Amir Aalam for Defendant and Appellant.

Law Offices of Darren J. Quinn and Darren J. Quinn for Plaintiffs and Respondents.

**OPINION**

**AARON, J.—**

I.

INTRODUCTION

Appellant Fred Collingwood served a motion for sanctions pursuant to Code of Civil Procedure section 128.7[1] on Lucian P. Day and Gussie L. Day and their attorney, Darren J. Quinn (collectively respondents), prior to entry of judgment. After the trial court entered judgment in favor of Collingwood,

---

[1] Unless otherwise specified, all subsequent statutory references are to the Code of Civil Procedure.

Collingwood filed the motion for sanctions. The trial court denied the motion as moot on the ground that it had been filed postjudgment. We conclude that the trial court had jurisdiction to consider the motion and that the court erred in concluding that the motion was moot because it was filed postjudgment. Accordingly, we reverse the trial court's order denying Collingwood's motion for sanctions and remand with directions to consider the motion.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

In August 2004, Lucian P. Day and Gussie L. Day (collectively the Days) filed a third amended complaint against Collingwood and others. In March 2005, Collingwood filed a motion for summary judgment.

On April 8, 2005, Collingwood served, but did not file, a motion for sanctions against respondents. In his motion, Collingwood asserted that the Days' action against him was frivolous and that "[a]ny reasonable person would have dismissed Collingwood long ago . . . ." Collingwood also served a memorandum in support of his motion. On April 29, Attorney Quinn filed an opposition to Collingwood's motion for summary judgment on behalf of the Days.

On May 13, 2005, the trial court granted Collingwood's motion for summary judgment. On June 3, the court entered a judgment of dismissal in favor of Collingwood.

On October 12, 2005, Collingwood filed a motion for sanctions with the supporting memorandum he had previously served on respondents. Respondents filed an opposition to the motion for sanctions, and Collingwood filed a reply.

On November 10, the trial court issued a tentative ruling on Collingwood's motion for sanctions. The ruling stated in relevant part: "The motion of Defendant Fred Collingwood for monetary sanctions against Lucian Day and Gussie Day and their attorney, Darren J. Quinn is <u>denied</u>. The motion [is] moot, as '[t]he purpose of section 128.7 is to deter frivolous actions and give the offending party the opportunity to withdraw or otherwise correct the pleading.' (*Banks v. Hathaway, Perrett, Webster, Powers & Chrisman* (2002) 97 Cal.App.4th 949, 955 [118 Cal.Rptr.2d 803].) A judgment of dismissal was entered in this case on June 3, 2005. '[A] section 128.7 sanctions motion

*served and filed* by a defendant after judgment has been entered cannot properly be granted if the conduct alleged to be sanctionable is the improper filing and/or advocating of the plaintiff's complaint.' (*Id.* at p. 954, quoting [*Barnes v. Department of Corrections* (1999) 74 Cal.App.4th 126, 128 [87 Cal.Rptr.2d 594]].) Accordingly, because Collingwood's motion is based on his belief the Third Amended Complaint's allegations lacked evidentiary support, the motion is denied." (Italics added.) That same day, after hearing argument from counsel, the trial court confirmed its tentative ruling.

On December 6, Collingwood filed a notice of appeal of the trial court's November 10 order.

III.

DISCUSSION

A. *Appealability*

Respondents claim the appeal must be dismissed because the November 10 order is not an appealable postjudgment order.

Section 904.1 provides in relevant part:

"(a) . . . An appeal, other than in a limited civil case, may be taken from any of the following:

"(1) From a judgment . . . .

"(2) From an order made after a judgment made appealable by paragraph (1)."

In *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644 [25 Cal.Rptr.2d 109, 863 P.2d 179] (*Lakin*), the Supreme Court considered whether an order denying attorney fees pursuant to section 2033, subdivision (a) was an appealable postjudgment order. The *Lakin* court noted that, notwithstanding the broad statutory language of section 904.1, not every postjudgment order that follows a final appealable judgment is appealable:

"To be appealable, a postjudgment order must satisfy two additional requirements. . . . [¶] The first requirement . . . is that the issues raised by the appeal from the order must be different from those arising from an appeal

from the judgment. [Citation.] 'The reason for this general rule is that to allow the appeal from [an order raising the same issues as those raised by the judgment] would have the effect of allowing two appeals from the same ruling and might in some cases permit circumvention of the time limitations for appealing from the judgment.' [Citation.] . . .

"The second requirement . . . is that 'the order must either affect the judgment or relate to it by enforcing it or staying its execution.' [Citation.] Under this rule, a postjudgment order that does 'not affect the judgment or relate to its enforcement [is] not appealable . . . .' [Citation.]" (*Lakin, supra*, 6 Cal.4th at pp. 651–652, fn. omitted.)

With regard to the first requirement, the *Lakin* court summarily held, "[A]n appeal from the order denying attorney fees pursuant to Code of Civil Procedure section 2033, subdivision (o), plainly raises issues different from those arising from the judgment itself." (*Lakin, supra*, 6 Cal.4th at p. 651.) With regard to the second requirement, after reviewing the case law regarding the characteristics of various appealable postjudgment orders, the *Lakin* court held: "[T]he order here in issue . . . is a postjudgment order that affects the judgment or relates to its enforcement because it determines the rights and liabilities of the parties arising from the judgment, is not preliminary to later proceedings, and will not become subject to appeal after some future judgment. Therefore, it is appealable." (*Id.* at p. 656.)

In *Shelton v. Rancho Mortgage & Investment Corp.* (2002) 94 Cal.App.4th 1337, 1345 [115 Cal.Rptr.2d 82] (*Shelton*), the Court of Appeal applied *Lakin* in holding that a postjudgment order denying a request for sanctions under section 128.5[2] was an appealable order. The *Shelton* court reasoned that the order constituted a final determination of the rights and liabilities of the parties arising from the judgment, and that it was not preliminary to some future judgment from which the order might be appealed. (See also *In re Marriage of Dupre* (2005) 127 Cal.App.4th 1517, 1524–1525 [26 Cal.Rptr.3d 328] [following *Shelton* and *Lakin* in concluding minute order denying sanctions pursuant to Fam. Code, § 3027.1 was appealable postjudgment order].)

 In this case, respondents argue that the trial court's order denying sanctions is not appealable because the issues on appeal would be "essentially the same" as in an appeal of the underlying summary judgment. We disagree with this contention. The issues in an appeal from a summary judgment and those in an appeal from an order denying sanctions are plainly distinct. (See

---

[2] Section 128.5 is a "predecessor statute" to section 128.7. (*Laborde v. Aronson* (2001) 92 Cal.App.4th 459, 466 [112 Cal.Rptr.2d 119].)

*Lakin, supra,* 6 Cal.4th at p. 651.) Accordingly, we conclude that the first requirement for appealability discussed in *Lakin* is satisfied.

With regard to the second requirement, respondents rely on *Lubetzky v. Friedman* (1991) 228 Cal.App.3d 35 [278 Cal.Rptr. 706] (*Lubetzky*), in arguing that a postjudgment order denying sanctions is not appealable because it does not enforce or stay the underlying judgment. The *Lubetzky* court stated that it had "serious doubt" as to whether an order denying sanctions under section 128.5 was an appealable postjudgment order because the order did not " 'affect the judgment or relate to it either by enforcing it or staying its execution.' [Citation.]" (*Lubetzky, supra,* 228 Cal.App.3d at pp. 44–45.) However, in *Lakin,* the Supreme Court found the *Lubetzky* court's reasoning unpersuasive, noting that the *Lubetzky* court provided no analysis to support its equivocal appealability determination. (*Lakin, supra,* 6 Cal.4th at pp. 655–656.) The *Shelton* court noted that *Lakin* had "cast doubt on the reasoning of *Lubetzky*" and explained that "the reasoning in *Lakin* is applicable, and . . . it trumps the equivocal holding in *Lubet[z]ky*." (*Shelton, supra,* 94 Cal.App.4th at pp. 1344–1345.)

■ We agree with the reasoning of *Shelton,* and with its application of *Lakin.* A postjudgment order denying a motion for sanctions, whether pursuant to section 128.5 (as in *Shelton*) or section 128.7 (as in this case), is a final determination of the rights and liabilities of the parties arising from the judgment, and is not preliminary to some future judgment from which the order might be appealed. We therefore conclude that a postjudgment order denying sanctions pursuant to section 128.7 is an appealable order pursuant to section 904.1, subdivision (a)(2). Thus, the trial court's November 10 order is an appealable postjudgment order.

B. *The trial court erred in denying Collingwood's motion as moot on the ground that the motion was filed after judgment was entered*

1. *The trial court had jurisdiction to consider Collingwood's postjudgment motion for sanctions*

Respondents claim that Collingwood's motion was "per se untimely, because it was filed after judgment was entered." Although respondents' argument is not clearly styled as a jurisdictional argument, we consider whether the trial court had jurisdiction to consider Collingwood's postjudgment motion. We apply the de novo standard of review to this claim. (See *Conservatorship of Kane* (2006) 137 Cal.App.4th 400, 405 [40 Cal.Rptr.3d

378] ["appeal presents pure issues of law concerning the jurisdiction and authority of the probate courts, as to which we must exercise de novo review"].)

In *Frank Annino & Sons Construction, Inc. v. McArthur Restaurants, Inc.* (1989) 215 Cal.App.3d 353, 357 [263 Cal.Rptr. 592] (*Frank Annino*), the court acknowledged the "general rule" that "once a person has been dismissed from an action he is no longer a party and the court lacks jurisdiction to conduct any further proceedings as to him." (Accord, *Ramon v. Aerospace Corp.* (1996) 50 Cal.App.4th 1233, 1237 [58 Cal.Rptr.2d 217] (*Ramon*) ["A final judgment terminates the litigation between the parties and leaves nothing in the nature of judicial action to be done other than questions of enforcement or compliance"]; 2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, § 406, p. 1015 ["Jurisdiction over a cause or parties after a final judgment, order or decree is exceptional and limited to special situations"].) However, the *Frank Annino* court also observed that "[e]ven after a party is dismissed from the action he may still have collateral statutory rights which the court must determine and enforce." (*Frank Annino, supra*, 215 Cal.App.3d at p. 357.) Among these collateral rights are "the right to statutory costs and attorneys fees and the right to notice and hearing on a motion to set aside the dismissal. [Citations.]" (*Ibid.*) Applying these principles, the *Frank Annino* court held that a trial court had jurisdiction over a party's sanctions motion pursuant to section 128.5 even though the party had been dismissed from the case. (*Frank Annino, supra*, 215 Cal.App.3d at p. 358; see also *West Coast Development v. Reed* (1992) 2 Cal.App.4th 693, 706 [3 Cal.Rptr.2d 790] (*West Coast Development*) [concluding trial court had jurisdiction to consider motion for sanctions pursuant to section 128.5 filed after dismissal of case and analogizing sanctions motion to a motion for costs].)

Similarly, in *Cooter & Gell v. Hartmarx Corp.* (1990) 496 U.S. 384, 389 [110 L.Ed.2d 359, 110 S.Ct. 2447] (*Cooter & Gell*), a party filed a motion pursuant to Federal Rules of Civil Procedure, rule 11 (28 U.S.C.) (Rule 11) prior to the opposing party's voluntary dismissal of its complaint. The federal district court did not rule on the motion for approximately three and one-half years, apparently due to other proceedings between the parties. (*Cooter & Gell, supra*, 496 U.S. at pp. 388–389.) In considering whether the dismissal of the complaint deprived the district court of jurisdiction to consider the sanctions motion, the United States Supreme Court ruled that a district court has jurisdiction to rule on a sanctions motion under Rule 11 even after termination of the underlying action: "It is well established that a federal court may consider collateral issues after an action is no longer pending. . . . Like the imposition of costs, attorney's fees, and contempt sanctions, the

imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate. Such a determination may be made after the principal suit has been terminated." (*Cooter & Gell, supra*, 496 U.S. at pp. 395–396.)[3]

In *Powell v. Squire, Sanders & Dempsey* (S.D. Ohio 1998) 990 F.Supp. 541, 543, 545 (*Powell*), vacated in part on another ground (6th Cir. 1999) 182 F.3d 918, the court, applying *Cooter & Gell*, held that it had jurisdiction to rule on a party's motion for sanctions that was filed two weeks after the court had granted the party's motion for judgment on the pleadings, and entered a final judgment in favor of the party.

The courts in *Frank Annino, West Coast Development*, and *Cooter & Gell* each considered a request for sanctions filed after a party's *voluntary dismissal* of a complaint (*Frank Annino, supra*, 215 Cal.App.3d at pp. 358–359; *West Coast Development, supra*, 2 Cal.App.4th at p. 702; *Cooter & Gell, supra*, 496 U.S. at pp. 393–394). The reason for allowing a sanctions motion to be filed and decided after a plaintiff's voluntary dismissal is particularly strong, since a contrary rule would allow a party to "avoid sanctions by simply dismissing the action without prejudice." (*Frank Annino, supra*, 215 Cal.App.3d at p. 359.)

*Powell* and the present case, in contrast, involve requests for sanctions filed after entry of a *judgment*. (See *Powell, supra*, 990 F.Supp. at p. 543.) However, in our view, this procedural distinction does not affect the analysis of the jurisdictional question. The rationale of the courts in *Frank Annino, West Coast Development*, and *Cooter & Gell* for considering sanctions motions filed after dismissal was, at least in part, that a sanctions motion is a collateral proceeding that is not directly based on the merits of the underlying proceeding. This would be true whether the final resolution of the underlying matter is by voluntary dismissal or a judgment. Further, a trial court's consideration of a postjudgment sanctions request does not undermine the finality of the merits of the judgment. (See *Ramon, supra*, 50 Cal.App.4th at p. 1238 [stating that a trial court lacks jurisdiction to consider a motion for reconsideration after entry of judgment because a "party obtaining a judgment must be entitled to rely on that judgment" and the opposing party "must use statutory methods to attack the judgment in the trial court or must file an appeal, and the party must take those steps within specified time periods"].)

---

[3] Because section 128.7 was based on Rule 11, "federal case law construing rule 11 is persuasive authority with regard to the meaning of Code of Civil Procedure section 128.7." (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167 [128 Cal.Rptr.2d 65].)

■ Even without a jurisdictional bar to the imposition of postjudgment sanctions, in considering whether to impose sanctions, the trial court is statutorily required to consider any delay in filing a sanctions motion. Section 128.7, subdivision (c) requires that, "In determining what sanctions, if any, should be ordered, the court shall consider whether a party seeking sanctions has exercised due diligence." In a similar vein, in *Cooter & Gell*, the United States Supreme Court stated that although a voluntary dismissal did not deprive the district court of jurisdiction to consider the motion for sanctions, ordinarily sanctions issues will be determined no later than by the end of a case: "Although Rule 11 does not establish a deadline for the imposition of sanctions, the Advisory Committee did not contemplate that there would be a lengthy delay prior to their imposition, such as occurred in this case. Rather, 'it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation, and in the case of motions at the time when the motion is decided or shortly thereafter.' Advisory Committee Note on Rule 11, 28 U.S.C.App., p. 576." (*Cooter & Gell, supra*, 496 U.S. at p. 398.)

We conclude the trial court had jurisdiction to consider Collingwood's postjudgment motion for sanctions.

> 2. *Section 128.7 does not require that a motion for sanctions be filed before the court renders a dispositive ruling on the pleading or motion as to which sanctions are sought*

Collingwood claims the trial court erred in denying his motion as moot on the ground that it was filed after judgment was entered. We apply the de novo standard of review to this claim. (See *Barnes v. Department of Corrections, supra*, 74 Cal.App.4th at p. 130 (*Barnes*) [whether party complied with safe harbor provision of sanction statute is "one of statutory interpretation, which is a pure question of law"].)

In *Banks*, the Court of Appeal outlined the procedural prerequisites to the imposition of sanctions pursuant section 128.7:

■ "Section 128.7 requires that an attorney in a civil action 'sign all pleadings, petitions, notice of motions and other similar papers. (§ 128.7, subd. (a).) The signature indicates that the attorney . . . certifies that: the paper is not being presented for an improper purpose; the legal contentions are warranted by law or nonfrivolous argument for extension, modification or reversal of existing law; the allegations and factual contentions have evidentiary support or are likely to have such support after a reasonable opportunity to further investigate; and the denials of factual contentions are warranted by the evidence. (§ 128.7, subd. (b).) If the court determines, after notice or a

reasonable opportunity to respond, that the attorney . . . improperly certified the document, it may impose an appropriate sanction. (§ 128.7, subd. (c).)' [Citation.]

■ ". . . Section 128.7, subdivision (c)(1) requires that the party seeking sanctions 'follow a two-step procedure. First, the party must serve a notice of motion for sanctions on the offending party at least 30 days before filing the motion with the court, which specifically describes the sanctionable conduct. [Citation.] Service of the motion on the offending party begins a 30-day safe harbor period during which the sanctions motion may not be filed with the court. [Citation.] If the pleading is withdrawn [or dismissed], the motion for sanctions may not be filed with the court. [Citation.] If the pleading is not withdrawn, the motion for sanctions may then be filed. [Citation.]' [Citation.]" (*Banks v. Hathaway, Perrett, Webster, Powers & Christman, supra,* 97 Cal.App.4th at pp. 952–953 (*Banks*).)

The safe harbor provision in section 128.7, subdivision (c)(1) provides: "A motion for sanctions under this section shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). Notice of motion shall be served as provided in Section 1010, but shall not be filed with or presented to the court unless, within 21 days after service of the motion, or any other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected."

"The purpose of the 30-day safe harbor provision is to permit the 'offending party to avoid sanctions by withdrawing the improper pleading during the safe harbor period. [Citation.] This permits a party to withdraw a questionable pleading without penalty, thus saving the court and the parties time and money litigating the pleading as well as the sanctions request.' [Citations.]" (*Banks, supra,* 97 Cal.App.4th at p. 953.)

In *Banks*, the defendants served a motion to dismiss the action as frivolous and a motion for sanctions, in June 2000. (*Banks, supra,* 97 Cal.App.4th at p. 951.) At the same time, the defendants also demurred to the complaint. (*Ibid.*) On September 11, 2000, the trial court sustained the demurrer without leave to amend. (*Ibid.*) Two days later, the defendants filed a motion for sanctions. (*Ibid.*) On October 11, the trial court granted the motion for sanctions, leaving the dollar amount of sanctions to be determined at a later date. (*Ibid.*) The court also dismissed the complaint. (*Ibid.*) The plaintiffs moved for a new trial, contending that the trial court lacked jurisdiction to award sanctions after having sustained the demurrer without leave to amend. (*Id.* at p. 952.) The trial court vacated the sanctions order and entered a

dismissal, ruling that because the September 11 order was a dispositive judicial ruling, it lacked jurisdiction to order sanctions after entry of that order. (*Ibid.*)

On appeal, the *Banks* court concluded that the "trial court erred in ruling that it 'lost jurisdiction' to award sanctions." (*Banks, supra*, 97 Cal.App.4th at p. 953.) The *Banks* court noted that the trial court had misconstrued dicta in *Cromwell v. Cummings* (1998) 65 Cal.App.4th Supp. 10, 13 [76 Cal.Rptr.2d 171] (*Cromwell*) that suggested that a sanctions motion "brought" after a dispositive judicial ruling on an improper pleading is untimely. (See *Banks, supra*, 97 Cal.App.4th at p 953.) The *Banks* court explained that the effect of the safe harbor provision of section 128.7, subdivision (c)(1) is that a trial court's ruling on an improper pleading bars consideration of a sanctions motion if the ruling is made before the sanctions motion "is served *and* filed." (*Banks, supra*, 97 Cal.App.4th at p. 954, italics added.)

The *Banks* court concluded that the defendants in that case "served the motion for sanctions and demurrer in proper sequence" and that the "trial court erred in ruling that the sustaining of the demurrer eviscerated [defendants'] right to seek sanctions." (*Banks, supra*, 97 Cal.App.4th at p. 954.) *Banks* makes clear that a section 128.7 motion that is *served* in compliance with the section 128.7, subdivision (c)(1) safe harbor provision need not be *filed* until after a final ruling on a challenged pleading. (*Banks, supra*, 97 Cal.App.4th at p. 954.)

Respondents rely on a number of cases in which courts have concluded that a motion for sanctions under section 128.7 that is not *served* sufficiently in advance of a dispositive ruling on the challenged pleading fails to comply with the safe harbor provision set forth in section 128.7, subdivision (c)(1). (See, e.g., *Barnes, supra*, 74 Cal.App.4th at p. 128 ["a section 128.7 sanctions motion served and filed by a defendant after judgment has been entered cannot properly be granted if the conduct alleged to be sanctionable is the improper filing and/or advocating of the plaintiff's complaint"]; *Cromwell, supra*, 65 Cal.App.4th at p. Supp. 13 [concluding motion for sanctions filed three days after service of motion violated safe harbor provision of section 128.7].)[4]

---

[4] The *Barnes* court was careful to limit its holding to an instance in which a party has failed to *serve* its motion for sanctions prior to the resolution of the case. (*Barnes, supra*, 74 Cal.App.4th at p. 135 ["we find that in order to comply with the safe harbor provision in section 128.7, a party must at the very least serve the motion for sanctions prior to the conclusion of the case"].) Further, the *Barnes* court noted in a footnote following this limitation that, "[T]his case does not present the issue of whether a motion that is served on a party 30 days prior to the conclusion of the case, but is filed after the case has been resolved, is timely." (*Barnes, supra*, 74 Cal.App.4th at p. 135, fn. 4.)

██ However, for the reasons stated in *Banks*, neither *Barnes* nor *Cromwell* is dispositive in this case. Unlike those cases, Collingwood complied with the safe harbor provision of section 128.7, subdivision (c)(1). Collingwood served his motion for sanctions on April 8, 2005, and requested that respondents dismiss the action against him. Respondents did not dismiss the action against Collingwood within the 21-day safe harbor period. Because the trial court did not grant Collingwood's motion for summary judgment until May 13, respondents had the full safe harbor period within which to dismiss the action.

Accordingly, the trial court erred in concluding that Collingwood's motion was moot because it was filed after the trial court had entered a dispositive ruling on the merits of the action.

### 3. *The trial court's order cannot be affirmed on the alternative grounds offered by respondents*

Respondents claim Collingwood's motion was untimely because it was not filed before "the motion cut off date." Although it is not clear from their brief, respondents appear to suggest that section 1005, subdivision (b) required that Collingwood serve his motion no later than May 6, 2005, which apparently was the motion cutoff date for various other pretrial motions in this case.[5] Section 1005, subdivision (b) provides that a motion must generally be "served and filed at least 16 court days before the hearing. . . ." Given that the hearing on the motion for sanctions was held in November 2005, it is clear that section 1005, subdivision (b) did not require Collingwood to file his motion by May 6. (Cf. *Cromwell, supra*, 65 Cal.App.4th at p. Supp. 13, fn. 3 ["Because [former] section 1005, subdivision (b) requires motions to be filed 15 days prior to the hearing [now 16 court days], section 128.7 subdivision (c)(1) effectively requires a motion for sanctions to be served at least 45 days before it will be heard, unless the period of notice is shortened by the court"].) Accordingly, we reject this argument.

---

[5] Although it is not contained in the appellate record, the trial court file includes a January 7, 2005 minute order that states that the parties stipulated that, "All motions and discovery, including but not limited to experts, judgment on the pleadings, leave to amend and bifurcate, must be completed and jury fees posted by May 6, 2005." Respondents have not cited any authority, and we are aware of none, that suggests that such a stipulation pertains to a motion for sanctions. The language of the stipulation indicates that the parties intended that the stipulation apply to motions that are required to be filed before trial. We decline to interpret the stipulation as establishing a deadline for the filing of Collingwood's motion for sanctions. (Cf. *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1160, fn. 7 [278 Cal.Rptr. 614, 805 P.2d 873] [noting that pursuant to the doctrine of ejusdem generis, "the general term or category is 'restricted to those things that are similar to those which are enumerated specifically.' [Citations.]"].)

Respondents also raise a number of arguments regarding the merits of Collingwood's motion for sanctions. Collingwood similarly requests that this court consider the merits of his sanctions motion. A trial court's award of sanctions under section 128.7 is discretionary. (See § 128.7, subd. (c)(1).) The Court of Appeal reviews a trial court's exercise of that discretion for an abuse of discretion. (*Guillemin v. Stein, supra,* 104 Cal.App.4th at p. 167; *Shelton, supra,* 94 Cal.App.4th at pp. 1345–1346 [in reviewing order denying sanctions, " ' " ' "[a]n appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge," ' " ' " italics omitted].)

In this case, the trial court did not exercise its discretion because it erroneously concluded that the motion for sanctions was moot. The case must be remanded to the trial court for consideration of Collingwood's motion for sanctions.

C. *Respondents' request for sanctions against Collingwood is denied*

Respondents claim Collingwood's motion for sanctions, and this appeal, were brought for an improper purpose, and request that this court impose sanctions against Collingwood pursuant to section 128.7, subdivision (h).

Section 128.7, subdivision (h) provides: "A motion for sanctions brought by a party or a party's attorney primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, shall itself be subject to *a motion for sanctions*. It is the intent of the Legislature that courts shall vigorously use its sanctions authority to deter that improper conduct or comparable conduct by others similarly situated." (Italics added.)

■ As discussed in part III.B., *ante,* section 128.7, subdivision (c)(1) specifies the manner by which a motion for sanctions pursuant to section 128.7 may be filed. The respondents did not file a motion for sanctions in the trial court. There is nothing in section 128.7, subdivision (h) that suggests that a party may seek sanctions pursuant to this provision in an appellate brief. Further, it is clear that this appeal was not frivolous, given that Collingwood has prevailed. Accordingly, respondents' request for sanctions pursuant to section 128.7, subdivision (h) is denied.

## IV.

## DISPOSITION

The order is reversed and the matter is remanded to the trial court for consideration of Collingwood's motion for sanctions, in accordance with the views expressed in this opinion. Collingwood is entitled to costs on appeal.

McConnell, P. J., and Irion, J., concurred.