Filed 7/19/21  Moore v. Bamboo Retreats CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MESHAK MOORE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BAMBOO RETREATS, LLC,<br><br>Defendant and Appellant. | B301641<br><br>(Los Angeles County<br>Super. Ct. No. BC671043) |

APPEAL from an order of the Superior Court of Los Angeles County, Mark V. Mooney, Judge.  Affirmed with directions.

Boren, Osher & Luftman, Jeremy J. Osher, and Aaron M. Gladstein, for Defendant and Appellant.

MyBedBugLawyer, Brian J. Virag, and Luiza Patrikyan, for Plaintiff and Respondent.

_____

# INTRODUCTION

Bamboo Retreats, LLC appeals from an order denying a motion to remand this case to arbitration, where an arbitrator had been hearing claims by Meshak Moore against Bamboo. Because the trial court did not have jurisdiction to hear the motion, we affirm the order denying it. But we have a few more things to say.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Moore Sues Bamboo, and the Trial Court Grants Bamboo's Motion To Compel Arbitration*

In August 2017 Moore filed this action against Bamboo, alleging that in July 2015 he leased an apartment or a house from Bamboo for two months pursuant to a written lease and that the premises were infested with bed bugs. Moore alleged the bedbugs "latched onto [him] while he slept, sucked his blood until they were gorged, and resist[ed] eradication." Moore alleged he suffered "[s]evere skin rash and personal injuries of the entirety of the body"; damage to his "furniture, clothing and personal belongings"; and "insect bites, sleeplessness, shame, embarrassment, inconvenience, humiliation, grief, anxiety and other symptoms." Moore asserted causes of action for breach of the warranty of habitability, negligence, nuisance, intentional infliction of emotional distress, breach of contract, and breach of the covenant of quiet enjoyment.

The lease included an arbitration provision, which stated: "I agree that any dispute arising from or relating to a claim for personal injury which is directly or indirectly related to, or

2

arising from a condition of the leased premises or common areas, or any event there on [*sic*], shall be resolved solely by arbitration conducted by the American Arbitration Association." The lease identified the "guests" as, and was signed in London by, Chase Fontaine and King Tut.[1]

In October 2017 Bamboo filed a motion to compel arbitration.[2] Bamboo argued that the Federal Arbitration Act (FAA) applied and that the arbitration provision "plainly embraces all of [Moore's] claims." Bamboo also argued "there will be no issues for the Court to decide once this case is submitted to arbitration." Moore opposed the motion, arguing, among other things, that Bamboo waived its right to arbitration, that the arbitration agreement did not apply to all of his causes of action, and that the arbitration agreement was unconscionable. Bamboo argued the arbitrator should decide the issue of waiver.

On January 26, 2018 the trial court granted Bamboo's motion to compel arbitration. The court ruled: "The court finds that an arbitration agreement exists and that it is governed by the Federal Arbitration Act and as such any objections to the arbitration agreement or defenses of waiver must be decided by the arbitrator. [¶] . . . [¶] This case is ordered stayed." The court set a hearing on the status of the arbitration for July 25, 2018.

---

[1] Apparently, Chase Fontaine is a fictitious or "stage" name for Moore, who eventually filed a document admitting he and Chase Fontaine "are one and the same person." The true identity of King Tut remains a mystery.

[2] There were some discussions in November 2016 and August 2017 about arbitrating the dispute, but those discussions ended with counsel for Moore's August 9, 2017 email, which in its entirety stated, "There is nothing to talk about."

3

B.    *The Parties Drag Their Collective Feet in the Arbitration*

Moore did not do anything for almost five months.  Finally, on July 12, 2018, with only two weeks until the status conference in court, counsel for Moore wrote counsel for Bamboo:  "We would like to get this case going.  We would like to use an arbitrator from Benchmark.  Who would you like to use in this case?"  Counsel for Bamboo subsequently advised the court that, even though Moore had proposed using an alternative dispute provider other than the American Arbitration Association (AAA), counsel for Bamboo would "continue to meet and confer with [counsel for Moore] in this regard."  Counsel stated that Bamboo's "inclination is to comply with the terms of the arbitration agreement" (i.e., select an arbitrator from the AAA, not from another provider).  On July 25, 2018 the court continued the status conference.

In July 2018 Moore filed a demand for arbitration with the AAA, but according to Bamboo, under the wrong rules.  In October 2018 Moore refiled his demand for arbitration under different rules.

At some point the AAA appointed an arbitrator; Moore asserts this occurred on or about December 10, 2018, but he does not cite any, and there is no, evidence in the record to verify the date of appointment.  Moore also suggests Bamboo delayed participating in the arbitration and failed to participate in a January 21, 2019 conference call with the arbitrator, but again Moore does not cite any, and there is no, evidence in the record of that either.

Once the arbitrator had been selected, Bamboo started to play games.  Bamboo advised the arbitrator that its attorneys

would not be representing Bamboo in the arbitration. Instead, Bamboo said, a non-attorney named Mark Berkowitz, whose written submissions to the arbitrator included the appellation "not a lawyer," would be representing the company in the arbitration. Berkowitz's first actions were to ask for a series of extensions and to advise the arbitrator that, at least as of February 13, 2019, Bamboo had not yet decided whether to participate in the arbitration.

C.  *The Parties File Motions in the Arbitration*

On April 3, 2019 the parties had a telephone conference with the arbitrator. The arbitrator ruled the parties could have until April 12, 2019 to file and serve "any and all Motions which they may now wish to make." The arbitrator stated: "After duly considering whatever filings are made as set forth above, I will in due course issue such Decisions/Orders as I determine are appropriate for the then-existing circumstances."

Moore did not file his motions by the arbitrator's April 12, 2019 deadline. Instead, on April 12, 2019 Moore asked the arbitrator for a one-week extension (to which Berkowitz, on behalf of Bamboo, stipulated) to allow his attorneys to appear in court on April 15, 2019 "to advise the Court on [Bamboo's] refusal to arbitrate the matter as ordered by the Court and request that [the] stay be lifted [or] in the alternative request to shorten time for the motion to be heard." The arbitrator granted the request in part, extending the deadline for filing motions to April 16, 2019. On April 15, 2019 the trial court denied Moore's request to lift the stay or shorten time.

On April 16, 2019 Bamboo, through Berkowitz, filed a motion for an arbitration award by summary disposition that, in

5

its confusing and often inconsistent argument, reflected it had been written by a non-lawyer. In essence, Bamboo argued it was entitled to an award on all claims because Moore was not a party to the contract and could not file a demand for arbitration, Moore's claims were barred by a two-year statute of limitations, and Moore had waived his right to arbitrate.

At some point Moore filed with the arbitrator a motion to remand the arbitration to the trial court, although the parties do not say when Moore filed this motion; it is not in the record, and there is no evidence of the grounds for that motion. Moore also filed an opposition to Bamboo's motion for an award by summary disposition, and Bamboo filed a reply.

D.    *The Arbitrator Makes a Ruling of Sorts*

On July 22, 2019 the arbitrator issued an order, more or less. In a section titled "Some Background," the arbitrator shared some musings about the arbitration, which the arbitrator said was "unique in a number of respects." The arbitrator observed that the lease was not signed by Bamboo and that it was signed by Chase Fontaine and King Tut, but not Moore. The arbitrator stated that the claims in the arbitration were "*not only for personal injury but for other matters as well*," that "it would seem" the personal injury causes of action were not barred by the statute of limitations, and that the court action and the arbitration "have suspended/tolled any further 'running' of the relevant Statutes of Limitations." The arbitrator also stated that Moore was asserting causes of action that were not for personal injury, such as breach of the warranty of habitability, breach of contract, intentional infliction of emotional distress, and nuisance.

6

Turning, at least tangentially, to the motions filed by the parties, the arbitrator stated that, "[a]lthough [Moore's] counsel and [Bamboo's] representative have both made extensive written 'arguments' in supports of their respective positions, *neither 'side' has submitted any formal evidence—e.g., in the form of either 'Affidavits', 'Declarations Under Penalty of Perjury,' etc.—in support of their respective 'arguments.'"* In a section titled "Decision," the arbitrator stated: "At this point in time, it is clear that [Bamboo's] representative's primary focus is on preventing this dispute from proceeding to a resolution pursuant to the AAA's Commercial Arbitration Rules. Those Rules provide, *inter alia* in Rule R-33, that Dispositive Motions may be allowed and ruled upon *only if* the Arbitrator determines that the moving party has shown that the motion is *likely to succeed and dispose of or narrow the issues in the case.* However, thus far [Bamboo's] representative, although he has made extensive written arguments (including citations to 'legal authority') in support of his Dispositive Motion, has not submitted any evidence to buttress his Dispositive Motion—e.g., no Affidavits, no Declarations Under Penalty of Perjury, no meaningful 3rd party letters or emails, etc."

Rather than ruling on the motions on this basis, however, the arbitrator proceeded to express some concerns about his assignment. The arbitrator stated: "So too **it is still not clear who are the actual/correct parties—both as to Claimant(s) and Respondent(s) in both the Court action and the Arbitration proceeding**." "Further," the arbitrator said, if the July 2015 lease "is valid and enforceable, and it relates **only [to] the arbitrability of claims for personal injury**," some of

7

Moore's other claims "**should not be heard in an arbitration proceeding but rather in a Court action**."

The arbitrator then revisited the trial court's ruling on Bamboo's motion to compel arbitration and questioned whether the court's ruling was correct. "Although the Court correctly cited the Federal Arbitration Act as applicable to this dispute, it is also now become apparent in this arbitration proceeding that further consideration needs to be given both to (**a**) what **claims** (presumably only those for 'personal injury') are subject to arbitration and (**b**) what **persons and/or entities** are the proper parties to *either or both the court action and the arbitration proceeding*? i.e. Any/all of the signatories to the July [2015] rental agreement? The 'landlord', the 'owner', the Manager and/or the member(s) of the LLC (and, *if so, as of what date or dates*). California law does allow for one-member LLC's (this named Respondent may or may not be). And so too the members of California LLC's are normally not liable for acts or omissions of the LLC *except in very limited circumstances*."

The arbitrator continued: "Customarily these kind of questions and concerns would be heard and resolved by the Arbitrator—especially when all parties were represented by experienced counsel. . . . However, I conclude that in the instant case [Moore's] counsel has made a compelling case for this dispute to be 'remanded' to the Court (even though the Court, once it has dealt with the above threshold questions (i.e., who are the parties and what if any claims for other than personal injury are subject to arbitration), may well—if it does not agree with ALL the contentions set forth in [Moore's] Motion to Remand— once again order at least some part, if not all, of this dispute back into arbitration)."

Finally, bringing its order to a close, the arbitrator granted Moore's motion to remand "in its entirety," except for Moore's pending request for attorneys' fees and costs (i.e., not in its entirety), and denied Bamboo's dispositive motion, also "in its entirety." The arbitrator also ruled: "This Order and Decision, and the resultant Administrative Stay of this arbitration proceeding, will remain in effect pending a further clarifying order from the Court." The arbitrator did not make any finding or ruling on waiver.

E.    *The Trial Court Changes Course*

On August 7, 2019, on the heels of the arbitrator's order, Moore filed in the trial court what is commonly called an ex parte application (i.e., an application on shortened notice to the other side) to "advise" the court of the arbitrator's July 22, 2019 order. Moore asked the court to lift the (litigation) stay and schedule a trial setting conference. Bamboo filed an opposition the next day, arguing that, under the AAA rules and the court's prior order compelling arbitration, the arbitrator was supposed to and should decide arbitrability issues and that the court did not have jurisdiction to rule on Moore's application.

On August 9, 2019 the trial court granted the application. The court lifted the stay, "remanded" the matter "back to the Civil Active List," and scheduled a trial setting conference for September 5, 2019.

On August 21, 2019 Bamboo filed the motion that is the subject of this appeal, titled a "Motion To Return Claims to Arbitration and Stay Action Pursuant to Code of Civil Procedure

9

Section 1281.4,"[3] asking the court to return the matter to arbitration and to direct the arbitrator to rule on any arbitrability issues. Bamboo argued that the court had already granted its motion to compel arbitration and directed the arbitrator to decide issues of arbitrability and that the arbitrator's July 22, 2019 remand order (if that's what it was) was improper. Bamboo also asked the court to reinstate the stay pending completion of the arbitration.

Moore opposed the motion, arguing that Bamboo's representative "did everything in his power to delay and prevent the arbitration from moving forward"; that Bamboo waived its right to arbitrate by failing to initiate, pay for, and participate in the arbitration; and that the arbitrator did not remand the matter for the court to determine arbitrability issues but essentially to get some advice on Moore's motion to remand. Moore argued Bamboo, its attorneys, and Berkowitz were trying "to financially bleed [Moore] by filing motions in bad faith, attaching declarations under oath when they have no intention of arbitrating, having [Moore] initiate arbitration, then ask to be refiled, then refuse to participate, claim there is no valid rental agreement, trying to dismiss the arbitration after they ask for it, and now once again lying to this Court in an attempt to get the case back into arbitration so they can refuse to participate and bleed [Moore] financially." Moore asserted that Bamboo and its representatives "blatantly perpetrated a fraud on the Court and Plaintiffs," that "[n]ow they are trying to do it again," and that the "take away from the Arbitrator[']s ruling is that [Bamboo] did not participate in the arbitration as ordered by the arbitrator on

---

[3]      Statutory references are to the Code of Civil Procedure.

10

numerous occasions." Moore complained it was "unfathomable that after all of its obstructive conduct [Bamboo] would file this motion" and that Bamboo's conduct was "egregious," "in bad faith," and "the epitome of bad faith."

On September 30, 2019 the trial court denied Bamboo's motion and set the case for trial. At the hearing, the trial court stated that Bamboo "never answered the complaint or even the petition for arbitration. They filed a dispositive motion, I don't have the motion itself, but it appears [Bamboo is] taking the position that [it was not] a party to this contract . . . . Well, that seems to be a pretty, pretty clear position that they're taking, a position inconsistent with pursuing the matter in arbitration. . . . All this is pretty weird stuff, but for an arbitrator to send it back—it says, 'Plaintiff's motion was granted in its entirety.' So that's why . . . I am inclined to deny the motion to return it back to arbitration. I think [Bamboo's] acts have . . . waived [its] right to pursue this matter in arbitration, given the history of the case." Suggesting Bamboo had the obligation to move the arbitration along because, although Moore was the claimant, Bamboo filed the motion to compel arbitration, and citing the arbitrator's statement that Berkowitz's "primary focus" was on preventing the arbitration from proceeding, the court found Bamboo had "waived [the] right to pursue this matter in arbitration based upon their refusal to get this matter arbitrated expeditiously as they should have." The court also stated that the argument in Bamboo's dispositive motion in the arbitration, that there was no enforceable lease or arbitration provision, was "inconsistent with trying to pursue this matter in arbitration." Bamboo timely appealed from the court's September 30, 2019 order.

11

## DISCUSSION

### A.     *We Have Jurisdiction*

Moore argues that the trial court's September 30, 2019 order denying Bamboo's motion to return the matter to arbitration is not appealable and that we should dismiss Bamboo's appeal.  Moore argues the trial court's September 30, 2019 order was "not the type of order that falls within" section 1294, subdivision (a).

"[S]ection 1294 governs appealability of orders in arbitration matters in California."  (*Judge v. Nijjar Realty, Inc.* (2014) 232 Cal.App.4th 619, 632.)  Section 1294 lists the orders concerning arbitration that are appealable: an order dismissing or denying a petition to compel arbitration; an order dismissing a petition to confirm, correct or vacate an award; and an order vacating an award, unless the court orders a rehearing in arbitration; and several others.  (See *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 66; *Hong v. CJ CGV America Holdings, Inc.* (2013) 222 Cal.App.4th 240, 248.)  An order denying a motion to return a matter to arbitration after it has already been in arbitration is not on the list.

As Bamboo correctly points out, however, its motion to return the matter to arbitration was the "functional equivalent of a motion to compel arbitration," the denial of which is appealable.  (See *Lawson v. ZB, N.A.* (2017) 18 Cal.App.5th 705, 714 ["the functional equivalent of an order denying arbitration [is] appealable under section 1294, subdivision (a)"]; see also *MKJA, Inc. v. 123 Fit Franchising, LLC* (2011) 191 Cal.App.4th 643, 655 [because an order denying a stay of litigation pending arbitration is the "functional equivalent of an order denying a petition to

12

compel arbitration," the order is appealable under section 1294, subdivision (a)]; *Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 99 ["an order staying arbitration is the functional equivalent of an order refusing to compel arbitration" and therefore is appealable].)  Bamboo wanted to be in arbitration, and the trial court denied its motion to get there. That order is appealable under section 1294, subdivision (a), as an order denying a motion to compel arbitration.

B.      *But the Trial Court Did Not*

Bamboo argues that the trial court, once it granted Bamboo's motion to compel arbitration, did not have jurisdiction to rule on Moore's request to lift the stay pending arbitration and set the case for trial and that the August 9, 2019 order was the "necessary precursor" to Bamboo's motion to return the case to arbitration and to the court's September 30, 2019 order denying that motion.  Bamboo asserts that, "because the arbitration was still ongoing, i.e., on an administrative hold, the trial court lacked jurisdiction to lift the stay, such that it should not have had the subsequent opportunity to rule on—and deny—the Motion to Return."  Where, as here, the procedural facts are not disputed,[4] whether the trial court had "subject matter jurisdiction is a legal question subject to de novo review." (*Guardianship of Ariana K.* (2004) 120 Cal.App.4th 690, 701; see *People v. Bilbrey* (2018) 25 Cal.App.5th 764, 770 [appellate court reviews de novo an argument the trial court lacked jurisdiction to rule on a motion]; *Day v. Collingwood* (2006) 144 Cal.App.4th 1116, 1123 [same].)

---

[4]      Some of the facts regarding waiver are disputed.

The trial court did not have jurisdiction to rule on either Moore's ex parte application or Bamboo's motion. Once a court has granted a motion to compel arbitration, section 1281.4 "requires a court to stay an action submitted to arbitration pursuant to an agreement of the parties. Beyond that, the court's role is fairly limited. Once a petition is granted and the lawsuit is stayed, 'the action at law sits in the twilight zone of abatement with the trial court retaining merely vestigial jurisdiction over matters submitted to arbitration.' [Citation.] During that time, under its 'vestigial' jurisdiction, a court may: appoint arbitrators if the method selected by the parties fails (§ 1281.6); grant a provisional remedy 'but only upon the ground that the award to which an applicant may be entitled may be rendered ineffectual without provisional relief' (§ 1281.8, subd. (b)); and confirm, correct or vacate the arbitration award (§ 1285). Absent an agreement to withdraw the controversy from arbitration, however, no other judicial act is authorized. [Citation.] [¶] In the interim, the arbitrator takes over. It is the job of the arbitrator, not the court, to resolve all questions needed to determine the controversy. [Citations.] The arbitrator, and not the court, decides questions of procedure and discovery." (*Titan/Value Equities Group, Inc. v. Superior Court* (1994) 29 Cal.App.4th 482, 487-488, fn. omitted; accord, *Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 923-924; *Cinel v. Christopher* (2012) 203 Cal.App.4th 759, 769.) "Appellate courts have . . . routinely rejected parties' efforts to have courts overstep their limited jurisdiction in cases that are stayed pending binding contractual arbitration." (*Optimal Markets, Inc.,* at p. 924.)

Where a party fails to participate in an arbitration after the trial court has granted a motion to compel arbitration, the other

14

party's "only avenue for redress" is in the arbitration proceeding. (*Blake v. Ecker* (2001) 93 Cal.App.4th 728, 737, disapproved on another ground in *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107, fn. 5; accord, *SWAB Financial, LLC v. E\*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1200-1201; see *Titan/Value Equities Group, Inc. v. Superior Court, supra*, 29 Cal.App.4th at p. 488 ["It is . . . up to the arbitrator, and not the court, to grant relief for delay in bringing an arbitration to a resolution."].) "The trial court may not step into a case submitted to arbitration and tell the arbitrator what to do and when to do it: it may not resolve procedural questions, order discovery, determine the status of claims before the arbitrator or set the case for trial because of a party's alleged dilatory conduct. It is for the arbitrator, and not the court, to resolve such questions." (*Titan/Value*, at p. 489; see *Byerly v. Sale* (1988) 204 Cal.App.3d 1312, 1316 ["only the arbitrator should determine whether there has been an unreasonable delay in prosecution which would justify dismissal"].) Moore explicitly, although perhaps unwittingly, concedes this point.

Thus, if Moore believed Bamboo was unreasonably delaying the arbitration or engaging in other dilatory conduct after the trial court granted Bamboo's motion to compel arbitration, Moore had the obligation to raise, and the arbitrator had the obligation to decide, that issue in the arbitration. (Cf. *Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1808 [remedy for "dilatory tactics" in an arbitration is to "move in the arbitration proceedings to terminate them for failure to pursue the arbitration claim with reasonable diligence"].) Moore may have raised the issue in his motion (in the arbitration) to remand; that motion is not in the record on appeal, so we do not know.

But we do know the arbitrator did not find Bamboo unreasonably delayed the arbitration proceedings or waived its right to arbitrate; the arbitrator's comment that Berkowitz's motivation appeared to be "preventing" the arbitration from proceeding did not amount to such a finding. More important, the arbitrator did not make any rulings or enter an award based on such a finding. The arbitrator did not strike any of Bamboo's papers, impose evidentiary or issue sanctions, enter Bamboo's default, proceed to conduct the arbitration without Bamboo, or, most significantly, enter an award.[5]

The trial court also lacked jurisdiction under sections 1283.4 and 1285 to rule on the arbitrator's order because the

---

[5]     Although the issue is for the arbitrator, one circumstance that generally would not support a finding of waiver is Bamboo's reluctance or failure to participate in the arbitration. Moore, as the claimant, has the obligation to pursue his claims in the arbitration. "It is, after all, the . . . claimant in arbitration, like the plaintiff in litigation, who bears the primary responsibility of exercising diligence in order to advance progress towards the resolution of its claim [citation], and [the defendant] is under no obligation to press for appointment of arbitrators when a claimant is himself dilatory." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 980.) Thus, Moore's argument that "Bamboo failed to initiate the Arbitration **it compelled**" has it backward. But the arbitrator can consider that, even under Moore's chronology, six to nine months of the delay was attributable to Moore (January 2018, when the trial court granted Bamboo's motion to compel arbitration, to July or October 2018, when Moore filed his original and subsequent demands for arbitration), and only four months of the delay was attributable to Bamboo (December 2018, when the arbitrator apparently was appointed, to April 2019, when Bamboo filed its motion in the arbitration).

16

order was not, and did not purport to be, an award.  (See *Kaiser Foundation Health Plan, Inc. v. Superior Court* (2017) 13 Cal.App.5th 1125, 1131 [an arbitration "award must 'include a determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy'"]; *Judge v. Nijjar Realty, Inc., supra,* 232 Cal.App.4th at p. 634, fn. 12 [trial court did not have jurisdiction "to vacate a less than final ruling made by the arbitrator"]; Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2020) ¶ 5:422.5 [an "interim order cannot be confirmed, corrected or vacated by a court"].)  The arbitration is not over; it is, according to the arbitrator, only "administratively stayed" until the trial court issues a "further clarifying order" the arbitrator hoped would address "threshold questions" of arbitrability.  The arbitrator's order was essentially an invitation for the court to provide an advisory opinion or give further input on an issue that was exclusively for the arbitrator.  Whatever the arbitrator's order was, it was not an award the trial court could "confirm, correct or vacate."  (§ 1285.)

Because the trial court did not have jurisdiction on September 30, 2019 to rule on Bamboo's motion to return the matter to arbitration and to stay the action, the trial court properly denied the motion, although for the wrong reason.  The trial court erred, however, in setting the case for trial.[6]  Of course, the trial court did not have jurisdiction on August 9, 2019 to rule on Moore's ex parte application either; the court erred at

---

[6]     Bamboo's motion to stay the action was technically moot because the prior stay under section 1281.4 was still in effect.

17

that time in granting Moore's application, lifting the stay, remanding the case to the civil active list,[7] and setting the case for trial. Therefore, that order was not valid. But because Bamboo did not appeal from that order, its correction will have to occur another day. (See *K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 881 ["'[T]he timely filing of an appropriate notice of appeal or its legal equivalent is an absolute prerequisite to the exercise of appellate jurisdiction.'"]; *In re G.C.* (2018) 27 Cal.App.5th 110, 117 [an appellate court lacks jurisdiction to review an order from which the appellant did not timely appeal].) Nothing in this opinion should be construed as precluding Bamboo from filing in the trial court a motion for reconsideration of the court's August 9, 2019 order granting Moore's ex parte application to advise the court of the arbitrator's order remanding the matter back to the trial court and to lift the stay, so that the trial court can vacate that order as well.

---

[7] There is, in fact, no longer such thing as a "civil active list." There are only cases assigned to civil departments. Some cases are more active than others, and some cases are waiting for an arbitration to conclude.

## DISPOSITION

The order is affirmed.  The trial court is directed to deny for lack of jurisdiction Bamboo's motion to return the matter to arbitration and to deny the motion to stay the action as moot. The parties are to bear their costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


McCORMICK, J.*

---

\*     Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.