Filed 12/16/21  Engel & Engel v. Shuck CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| ENGEL & ENGEL, LLP,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>THOMAS E. SHUCK et al.,<br><br>    Defendants and Appellants. | B306491<br><br>(Los Angeles County Super. Ct. No. BC620667) |


APPEAL from an order of the Superior Court of Los Angeles County, Stephanie M. Bowick, Judge.  Dismissed.

Randall S. Waier for Defendants and Appellants.

Tisdale & Nicholson and Michael D. Stein; Law Offices of Chad Biggins and Chad Biggins for Plaintiff and Respondent.

\* \* \* \* \* \*

In this case, the defendants moved for sanctions prior to trial on the ground that the plaintiff's lawsuit was frivolous. The trial court denied the motion. Five months after the entry of judgment for the defendants, the defendants renewed their sanctions motion. The trial court denied their motion to renew, both procedurally and on the merits. We lack jurisdiction to entertain the defendants' appeal from this denial. In an effort of avoid this result, the defendants urge upon us several arguments that are inconsistent with the positions they took below and inconsistent with one another; in the course of doing so, they also do not accurately represent the record below. Such argumentative gymnastics and strategic omissions are unhelpful and, ultimately, unavailing. We accordingly dismiss the appeal.

## FACTS AND PROCEDURAL BACKGROUND

### I. Underlying Transactions

Over a decade ago, two persons solicited investments in a surgical building in Newport Beach from Wells Fargo Equipment Finance, Inc. (Wells Fargo), from John and Judith DeLong (the DeLongs), and from Leona Horowitz (Horowitz). When the investments failed, Wells Fargo, the DeLongs, and Horowitz sued the solicitors in separate lawsuits for misuse of their funds.

In the spring of 2014, Engel & Engel, LLP (plaintiff) was retained to do the forensic accounting in support of one or more of these pending lawsuits. Although Wells Fargo, the DeLongs, and Horowitz discussed a pooling arrangement under which the three would split the costs of plaintiff's services, only the DeLongs and Horowitz signed retainer agreements with plaintiff. Plaintiff

2

ended up billing over $110,000 in fees on the pending lawsuits in May, June, and July 2014. Although plaintiff allocated its bills between Wells Fargo, the DeLongs, and Horowitz, only Horowitz paid those bills.

In 2014, plaintiff sued the DeLongs for its unpaid fees. During the ensuing arbitration, plaintiff took the positions that the DeLongs were solely responsible for *all* of the remaining unpaid bills or for all but $16,909.49 of the unpaid bills. The arbitrator ruled that the DeLongs were liable to plaintiff in quantum meruit, and awarded $27,100.13 as the value of plaintiff's services. The award was subsequently confirmed.

## II. Procedural Background

### A. *Plaintiff's lawsuit as a whole*

In May 2016, plaintiff sued Wells Fargo—as well as the lawyer who represented Wells Fargo in its lawsuit against the solicitors of the investment (Thomas E. Shuck (Shuck)) and the law firm Shuck worked for at the time (Parker Milliken Clark O'Hara & Samuelian, APC (the law firm)) (collectively, defendants). Specifically, plaintiff asserted claims for (1) intentional misrepresentation, (2) false promise, (3) negligent misrepresentation, (4) quantum meruit, and (5) promissory estoppel. In this lawsuit, plaintiff took the position that *Wells Fargo* was solely responsible for at least $37,571.32 of the fees it charged in 2014.

Defendants responded that plaintiff's lawsuit was barred by the doctrine of judicial estoppel because plaintiff's position in this case (namely, that *Wells Fargo* was liable for at least $37,571.32 of its fees) was factually inconsistent with plaintiff's position in its case against the DeLongs (namely, that *the*

3

*DeLongs* were liable for the bulk of the unpaid fees and that Wells Fargo was liable for, at most, $16,909.49 of the fees).

Defendants moved for summary adjudication. On June 28, 2018, the trial court granted summary adjudication on plaintiff's quantum meruit claim on the grounds of judicial estoppel, but denied the motion as to plaintiff's remaining representation-related claims because there were "triable issues of fact as to whether plaintiff relied upon the representations made by Shuck to its detriment." Thereafter, plaintiff dismissed its promissory estoppel claim.

The remaining claims proceeded to a three-day bench trial in November 2018. In a final statement of decision filed on February 27, 2019, the trial court ruled that plaintiff's remaining claims were also barred by the judicial estoppel doctrine because plaintiff had previously taken the inconsistent positions that the DeLongs and now defendants were solely responsible for the same fees.

The court entered judgment for defendants on April 19, 2019.[1]

B. ***Adjudication of sanctions motion***

1. *Initial sanctions motion*

On June 11, 2018, which was prior to the trial court's summary adjudication ruling and prior to trial, the law firm and Shuck moved for sanctions under Code of Civil Procedure section

---

[1] In a separate appeal, we ruled that the trial court's findings were supported by substantial evidence and affirmed the judgment. (*Engel & Engel, LLP v. Shuck* (Nov. 4, 2021, B297421) [nonpub. opn.].)

4

128.7[2] against plaintiff and its attorney. The motion argued that plaintiff's complaint was "without evidentiary merit" due to judicial estoppel and was also "filed for an improper purpose." The motion did not request a specific amount of sanctions.

After further briefing, the trial court held a hearing on the motion on October 1, 2018. At the hearing's conclusion, the trial court took the matter under submission and continued it until October 22, 2018.

A few days before the October 22 hearing date, the trial court issued a tentative ruling. In that ruling, the court denied the sanctions motion, reasoning that (1) plaintiff's quantum meruit claim was not initially frivolous but "may have be[come] frivolous" in light of its principal's admissions that the DeLongs were solely liable for the bulk of plaintiff's fees, (2) plaintiff's remaining claims—particularly in light of the court's intervening denial of summary adjudication—were "not frivolous," and (3) it would be incredibly difficult to "apportion sanctions" between the frivolous and nonfrivolous claims, particularly when defendants "failed to set forth the amount [of] sanctions they [were] seeking."

At the October 22 hearing, the trial court rejected Shuck's and the law firm's request to postpone ruling on the sanctions motion until after the trial. Instead, the court voiced its intention to "rule on [the motion]" that day and, in response to questioning from counsel, indicated that it had "ruled on [the] motion for sanctions," ostensibly by virtue of its tentative ruling. However, the trial court did not ever *state*—either on the record or in its minute order for the October 22 hearing—that it adopted its tentative ruling.

_____

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

However, three days after the October 22 hearing, plaintiff served a notice of ruling that (1) stated the trial court "denied" the motion for sanctions, and (2) attached a copy of the trial court's tentative ruling.  The law firm and Shuck never objected to the notice of ruling.

2. *Renewed motion for sanctions*

On September 26, 2019, which was five months after judgment was entered, seven months after the post-trial final statement of decision was filed, and 11 months after the trial court's October 22 ruling on the sanctions motion, the law firm and Shuck filed a motion to renew their initial sanctions motion; they cited section 1008, subdivision (b).  The renewal motion was *premised* on the trial court's denial of the initial sanctions motion:  Defendants asked the court "to consider anew its denial" of the prior motion, characterized the motion as a "renew[al of] their prior and unsuccessful sanction motion," and explained the procedural history that after taking the motion under submission the court had "denied the [initial] motion without prejudice." Indeed, their counsel went so far as to declare, under penalty of perjury, that the "original sanction motion . . . was denied."  The law firm and Shuck argued that renewal of the motion was proper under section 1008, subdivision (b), because of (1) "'new' and 'different circumstances,' namely the [c]ourt's factual and legal findings in its 'Final Statement of Decision,'" and (2) the "'new' fact of the amount of attorney fees, totaling $148,875" that the law firm and Shuck incurred from the time they gave plaintiff notice of the sanctions motion in May 2018 until judgment was entered in defendants' favor in April 2019.  After receiving separate opposition papers from plaintiff and its attorney, the law firm and Shuck repeatedly reaffirmed their position that the

6

trial court had ruled upon—and denied—the initial sanctions motion.

On December 19, 2019, the trial court ordered the parties to provide supplemental briefs on "whether or not" the court had "issued a final ruling" on the initial sanctions motion. Upon receiving this order, the law firm and Shuck then did a proverbial "180" and took the position that the trial court had *never* ruled on the initial motion, going so far as to have their counsel file a supplemental declaration—wholly inconsistent with his prior declaration—swearing that "there was no final . . . ruling" on the original motion. As a result of this new position, the law firm and Shuck now asked the trial court to "finally rule on the originally-filed [s]ection 128.7 motion."

Following a further hearing on January 29, 2020, the trial court denied the motion in a 12-page minute order issued on February 13, 2020. Specifically, the court ruled that (1) it had "formally ruled" and denied the initial sanctions motion, (2) the absence of a minute order reflecting that ruling was a "clerical error," (3) the law firm and Shuck's motion was a motion to renew the initial sanctions motion under section 1008, subdivision (b), (4) the court lacked jurisdiction to entertain a "post-judgment renewal of a prior sanctions motion," and (5) even if the court had jurisdiction, the court would deny the motion to renew because the law firm and Shuck (a) did not act with "sufficient diligence" in waiting seven months after the final statement of decision and five months after the entry of judgment to bring the renewal motion, and (b) did not "sufficiently show[] new or different facts justifying renewal of the [initial sanctions] motion." In the alternative, the court ruled that, even if it treated the law firm and Shuck's motion as a wholly independent

motion for sanctions under section 128.7, the motion would be denied because (1) they "had not been diligent in seeking sanctions," (2) section 128.7 sanctions may not be sought after judgment because (a) such a postjudgment motion "cannot effectuate the legislative intent of the statute" to "prevent frivolous pleadings," and (b) it is impossible to satisfy section 128.7's "safe harbor" requirement (that is, by giving the party against whom sanctions are sought 21 days to withdraw the offending pleading) after judgment because, at that time, that party "would have no way to withdraw the 'offending pleading.'"

The law firm and Shuck filed this timely appeal.

## DISCUSSION

The law firm and Shuck argue that the trial court erred in denying their motion for sanctions. We generally review a trial court's ruling denying sanctions for abuse of discretion (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 441), although we review subsidiary factual questions for substantial evidence (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1478-1479) and subsidiary legal questions de novo (*Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 921 (*Optimal Markets*)). We independently review whether we have jurisdiction to entertain an appeal. (*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 252; *Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, 818, 820.)

We conclude that we do not have jurisdiction to entertain this appeal. In its February 2020 order, the trial court found that it had denied the initial motion for sanctions at the October 22, 2018 hearing. This finding is supported by substantial evidence. The colloquy between the court and counsel evinced the court's intention to rule on the motion. The parties also acted as if the

court *had* issued a ruling: Plaintiff filed a notice of ruling reporting that the trial court had ruled on the motion, and neither the law firm nor Shuck objected to that notice of ruling.[3] Although the trial court's ruling was not in a minute order and was thus not immediately effective (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1170), that omission was a clerical error that the trial court was empowered to—and, in its February 2020 order, did—correct retroactively, although the court did so without using the words "nunc pro tunc." (*People v. Sanchez* (2019) 41 Cal.App.5th 261, 268 ["Entering the order in the minutes is a purely clerical function"]; *People v. Borja* (2002) 95 Cal.App.4th 481, 485 [court may issue "nunc pro tunc order[s]" to "correct[] clerical errors"]; accord, *Badella v. Miller* (1955) 44 Cal.2d 81, 86 [trial courts are "ordinarily . . . in a better position to" correct their own clerical errors].) Because the initial sanctions motion was denied prior to the entry of judgment, the order denying that motion became part of the judgment and was subject to appeal—if at all—from that judgment. (*Wells Properties v. Popkin* (1992) 9 Cal.App.4th 1053, 1055-1056 [denial of sanctions motion is not separately appealable, but may be appealed as part of the judgment]; see generally, *Barton v. Ahmanson Developments, Inc.* (1993) 17 Cal.App.4th 1358, 1360 [explaining "one final judgment rule"].) Although plaintiff filed a timely appeal from the judgment, the law firm and Shuck did not. Instead, the law firm and Shuck filed their motion to renew the initial sanctions motion that the trial court had denied. Because a trial court's denial of a renewal motion is not appealable (*Tate*

---

[3] For this purpose, it does not matter whether the law firm or Shuck had a duty to object to a notice of ruling or whether plaintiff had an initial duty to file a proposed order.

9

*v. Wilburn* (2010) 184 Cal.App.4th 150, 160; *Global Protein Products, Inc. v. Le* (2019) 42 Cal.App.5th 352, 363-364; *Chango Coffee, Inc. v. Applied Underwriters, Inc.* (2017) 11 Cal.App.5th 1247, 1254), we lack jurisdiction over the appeal before us now.

The law firm and Shuck resist this conclusion with what can be grouped into three arguments.

First, the law firm and Shuck argue that the trial court never ruled on the initial motion for sanctions; that their postjudgment "motion for renewal" is, despite its name, *really* a motion asking the trial court to finally issue a ruling on the initial motion; and that, under *Day v. Collingwood* (2006) 144 Cal.App.4th 1116, 1123 (*Day*), a postjudgment order denying sanctions is appealable as long as the motion, as here, was initially served prior to judgment. We reject this argument for several reasons. Most notably, and as we have explained above, the trial court *did* rule on the initial motion for sanctions. Even if we ignore this critical fact, a party forfeits the right to appellate review if it does not press the court for a ruling on its motions or objections prior to the time to seek an appeal, which is typically when judgment is entered. (*E.g., People v. Valdez* (2012) 55 Cal.4th 82, 143; *Phillips v. Campbell* (2016) 2 Cal.App.5th 844, 848 [failure to press for a ruling waives the issue on appeal]; *Sommer v. Martin* (1921) 55 Cal.App. 603, 610 ["The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them"].) Here, accepting the law firm and Shuck's premise for the moment, they did not press the trial court for a ruling on the initial sanctions motion until *after* judgment. Thus, they forfeited any right to challenge the lack of ruling on the sanctions ruling. Even if we ignored this second defect, the law firm and

10

Shuck waited *five months* after judgment to file their motion.[4] Parties must typically act with reasonably diligence (see, e.g., *Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 839 [party seeking renewal of motion must show "diligence with a satisfactory explanation for not having presented the new or different information earlier"]; *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1420-1421 [both one-month and six-month delays show insufficient diligence for purposes of relief under section 473]; *Nave v. Taggart* (1995) 34 Cal.App.4th 1173, 1178 [party cannot "take no action and rely on this [appellate] court to beneficently grant relief"]), and the trial court here found that the law firm and Shuck did not. This finding is supported by substantial evidence. Were we to hold otherwise, a party could file a "renewal" motion months or years after judgment was entered and breathe new life into a potential appeal that had long since been dead and buried. We decline to give succor to such an unholy resurrection.

Second, the law firm and Shuck argue that the trial court never ruled on the initial motion for sanctions; that their postjudgment "motion for renewal" is, despite its name, *really* a brand new motion for sanctions under section 128.7; and that postjudgment motions for sanctions are both appropriate and appealable. We reject this argument for several reasons. As with the first argument, the trial court *did* rule on the initial motion

---

4 The law firm and Shuck repeatedly argued to the trial court and to this court that there is only a *three*-month delay between the judgment and their renewal motion. As we read the calendar, the time between April 19 (as the fourth month of the year) and September 26 (as the ninth month of the year) is five months, not three.

11

for sanctions, and the law firm and Shuck did not act with reasonable diligence in filing the motion seven months after the trial court issued its final statement of decision and five months after the entry of judgment—particularly when the basis for the allegedly new sanctions motion was the trial court's findings in the statement of decision that plaintiff's remaining claims at trial lacked merit.  Moreover, we harbor significant doubts that a wholly new motion for sanctions can be filed after the entry of judgment where, as here, what is being challenged is the opposing party's prejudgment position.  (See *Banks v. Hathaway, Perrett, Webster, Powers & Chrisman* (2002) 97 Cal.App.4th 949, 954-955 [sanctions motion under section 128.7 "'served and filed by a defendant *after judgment has been entered*'" is improper "'if the conduct alleged to be sanctionable is the improper filing and/or advocating of the plaintiff's complaint'" (italics added)]; *Barnes v. Department of Corrections* (1999) 74 Cal.App.4th 126, 128 [same]; *Hart v. Avetoom* (2002) 95 Cal.App.4th 410, 414 [same]; cf. *Optimal Markets*, *supra*, 221 Cal.App.4th at pp. 918-923 [sanctions motion filed, and decided, prior to entry of judgment]; *Eichenbaum v. Alon* (2003) 106 Cal.App.4th 967, 975-976 [sanctions motion before party files voluntary dismissal]; *Day*, *supra,* 144 Cal.App.4th at p. 1123 [sanctions motion served before judgment is entered]; *Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1022-1025 [vexatious litigant motions filed and then plaintiff dismissed defendants who filed motions]; *Shelton v. Rancho Mortgage & Investment Corp.* (2002) 94 Cal.App.4th 1337, 1343 [sanctions motion filed after judgment, but based on postjudgment misconduct in evading judgment].)  Lastly, even if we ignored this authority and held that we could entertain this appeal, the law firm and Shuck have

made no effort to argue in their briefs why the trial court erred in denying sanctions beyond suggesting that sanctions are *automatic* once a trial court determines that a case is frivolous; that is not the law. (*Kojababian v. Genuine Home Loans, Inc.* (2009) 174 Cal.App.4th 408, 422 ["Section 128.7, subdivision (c) does not require the imposition of monetary sanctions upon the finding of a violation of section 128.7, subdivision (b); rather, it gives the trial court discretion to impose sanctions based on such a finding"].)

Finally, the law firm and Shuck argue that the trial court's failure to issue a minute order on their initial sanctions motion leaves them in a "purgatory," and implore us to liberate them from this limbo by construing their appeal as petition for a writ of mandate seeking a remand so the trial court can consider their motion for sanctions and issue a formal order. If the law firm and Shuck are in a purgatory, it is one of their own making: If they truly believed (as they say now) that the trial court did not rule on the initial motion, they could have objected to the notice of ruling or otherwise sought clarification prior to judgment; if they truly believed (as they initially said before the trial court) that the trial court ruled on the initial motion, they could have filed a motion to renew in the two months between the final statement of decision and the entry of judgment. Yet they took none of these actions. What is more, a remand for the trial court to rule on their initial motion would serve no purpose. Contrary to what the law firm and Shuck represent in their appellate briefs, the trial court's comprehensive minute order did not just rest on jurisdictional grounds; the trial court also expressed its ruling on the merits. Ordering a remand so that the trial court can say, "Yes, that's what I meant" would do nothing but waste

13

time and judicial resources, both of which are limited and precious.

## DISPOSITION

The appeal is dismissed.  Plaintiff is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST

14